**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AJET ARUCI (A-No. 200-308-154),<br>Petitioner,<br>v.<br>WILSON, et al.,<br>Respondents. | Case No. 1:26-cv-05132-JLT-EGC<br><br>ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS; DENYING THE MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT; AND DIRECTING THE CLERK OF COURT TO CLOSE THE CASE<br><br>(Docs. 1, 5) |

## I. INTRODUCTION

Before the Court is Ajet Aruci's request for a temporary restraining order (Doc. 5), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) The government filed a response to the TRO and the underlying petition, asserting that Petitioner is subject to mandatory detention under 8 U.S.C. § 1231(a)(6). (Doc. 7 at 1–4.) For the reasons set forth below the Court, **DENIES** the habeas petition.[1]

///

[1] When the Court set a briefing schedule on the motion for TRO, it ordered the parties to state their position as to whether the motion for TRO should be converted to a preliminary injunction without further briefing, whether the parties sought a hearing, and whether the parties sought additional briefing on the habeas petition. (Doc. 6.) Neither party requests a hearing or further briefing on either the TRO or habeas petition. (*See* Doc. 7 at 5; Doc. 8.) Accordingly, the Court decides this case on the underlying habeas petition.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts he is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitioner argues he is entitled to immediate release, or in the alternative, a bond hearing because the Government violated his Fifth Amendment Due Process Clause when Immigration and Customs Enforcement re-detained him. (Doc. 1 at 7–9.) Thus, he properly invokes the Court's habeas jurisdiction.

The Immigration and Nationality Act limits judicial review in many instances. Though 8 U.S.C § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien," the central issue here is Petitioner's continued detention pending his removal. Thus, this Court has the authority to review Petitioner's habeas petition. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection); *Reno v. American–Arab Anti–Discrimination Comm*., 525 U.S. 471, 482 (1999).

## III. FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a citizen of Albania. (Doc. 1 at 3.) He entered the United States on February 18, 2008, as a B-2 visitor, and later changed his status to a F-1 student. (*Id*. at 4; Doc. 7 at 13.) Petitioner claims to have lived in the United States continuously for the past eighteen years. (Doc. 1 at 4.) On June 23, 2011, Petitioner was arrested and charged with violating New York Penal Law § 120.50(3) stalking in the third degree. (*See* Doc. 7 at 13, 17.) Petitioner indicates that he was never convicted of this offense, (Doc. 8 at 4), and immigration court records confirm that the charge of stalking was dismissed on April 1, 2013. (Doc. 7 at 17 n.1.) Apart from this arrest, Petitioner has no other criminal history. (*See id*. at 13.)

On July 2, 2011, the Department of Homeland Security detained the Petitioner following

his release from Albany County Jail and issued him a Notice to Appear charging him as removable under 8 U.S.C. § 1227(a)(1)(C)(i). (Doc. 1 at 4; *see* Doc. 7 at 2, 7.) Specifically, the charge of removability was for not attending college and therefore failing to comply with the conditions of his F-1 student visa. (*See* Doc. 7 at 7, 13.) On August 4, 2011, DHS released Petitioner from custody after he posted a $7,500 bond granted by the Immigration Judge. (*Id*. at 13.)

On November 26, 2012, Petitioner filed an I-485 application for adjustment of status. (Doc. 7 at 13.) On September 29, 2016, the IJ denied Petitioner's application for cancellation of removal and ordered him removed to Albania. (*Id*. at 13, 16–27.) Petitioner appealed that decision to the Board of Immigration Appeals, and on May 24, 2017, the BIA dismissed the appeal. (*Id*. at 13, 29–32.) On October 6, 2017, Petitioner filed a motion to reopen his immigration proceedings with the BIA. (*Id*. at 13.) On March 29, 2018, the BIA denied Petitioner's motion to reopen. (*Id*. at 13, 45–48.) In March 2018, Petitioner married a U.S. citizen with whom he later had a daughter. (Doc. 1-4 at 1.) Though Petitioner indicates that he "never breached" his prior release on bond, (Doc. 1 at 4), the I-213 indicates that on July 27, 2018, Petitioner breached his bond after an obligor failed to deliver him to the New York Immigration and Customs Enforcement Field Office. (Doc. 7 at 13.)

On January 30, 2020, Petitioner filed an I-290 Notice of Appeal or Motion, which was denied on June 2, 2020. (Doc. 7 at 13.) On September 8, 2022, however, ICE granted Petitioner's request for stay of removal. (*Id*.; *see also* Doc. 13-1 at 3.) Specifically, ICE granted a one-year temporary stay of removal based on a recent Secretary of Homeland Security memorandum granting low priority to people who met certain qualifications, which Petitioner did. (Doc. 14 at 3.) Accordingly, on September 30, 2022, DHS placed the Petitioner on an Order of Supervision ("OSUP") "[b]ecause the agency ha[d] not effected [his] deportation or removal during the period prescribed by law." (*Id*. at 13, 50–53.) The release conditions required, in relevant part, that Petitioner "not travel outside New York for more than 48 hours without first having notified th[e] agency office . . . and obtaining approval from th[e] agency" as well as "furnish written notice to th[e] agency office of any change of residence or employment 48 hours

prior to such change." (*Id*. at 50.) At the time of his release, Petitioner and his wife lived in Niagara Falls, New York, in a home owned by his wife, which was the address on file for his OSUP reporting requirements. (Doc. 1-4 at 1.)

On April 10, 2023, Petitioner filed an I-130 Petition for Alien Relative, to adjust status through his U.S. citizen wife, which remains pending. (Doc. 7 at 14; *see* Doc. 1-3 at 2; Doc. 1-4 at 1.) Sometime in June 2023, ICE converted Petitioner's reporting requirements to telephonic check-ins. (Doc. 1 at 2; *see also* Doc. 7 at 13.) Petitioner claims that he answered every call as required. (Doc. 1 at 2.) In year 2023, Petitioner moved from Buffalo, New York to Elk Grove, California, without informing ICE, which Respondents argue was in violation of his OSUP conditions.[2] (*See* Doc. 7 at 4, 14; Doc. 1-4 at 1.) Petitioner's wife explains that he did not update his address with ICE because, on advice of his immigration counsel, because his "matters were still pending in New York," and the home was still owned by his wife. (Doc. 1-4 at 1; Doc. 8 at 3.) According to Petitioner, Respondents assertion that he was in violation of OSUP ignores that ICE itself placed him on telephone reporting and accepted his calls for two and a half years while Petitioner lived in California. (Doc. 1 at 2.)

After his I-130 family petition had been pending for over three years, Petitioner received notice from USCIS that he and his wife had been scheduled for an interview on June 30, 2026, at the Buffalo New York Field Office. (Doc. 1-3 at 1.) On June 28, 2026, Petitioner, his wife, and their daughter arrived at the Sacramento Airport to fly to Buffalo for their scheduled interview. (Doc. 1 at 6.) Petitioner was carrying his interview notice with him. (*Id*.) ICE officers intercepted him at the airport and took him into custody. (*Id*.) Because of the arrest, Petitioner was unable to attend his scheduled I-130 family petition interview. (*Id*.)

That same day, ICE served Petitioner with a Notice of Revocation of Release indicating that Petitioner's release had been revoked pursuant to 8 C.F.R. § 241.4(l). (Doc. 7 at 55.) The notice did not cite a release violation, or Petitioner's failure to update his address, as the basis for revocation. (*See id*.) Instead, the notice explains that Petitioner's release was revoked to "enforce

---

[2] Although the I-213 indicates that Petitioner moved to California on March 2026, (Doc. 7 at 14), the declaration submitted by Petitioner's wife indicates that the family moved to California sometime in 2023 after she accepted a job in Sacramento, California. (Doc. 1-4 at 1.)

the removal order entered against" him because "ICE has the ability and means to effectuate" his removal. (*Id.*) Specifically, ICE had "obtained a travel document and scheduled Petitioner's removal to take place no later than September 26, 2026." (*Id.*) That travel document includes Petitioner's Albanian passport, set to expire in 2035. (*Id*. at 63.) Included in the Notice of Revocation was notice of an informal interview, (*id*. at 56), which also took place on the day of Petitioner's arrest. (*Id*. at 61.) Finally, that day ICE also issued an I-205 administrative warrant for Petitioner's arrest. (*Id*. at 58.)

In July 2026, Petitioner filed a petition for writ of habeas corpus and TRO arguing that the government failed to comply with controlling regulations when revoking Petitioner's release, did not provide a meaningful opportunity to respond, and engaged in arbitrary conduct by arresting him while on the way to his USCIS family petition interview to adjust status. (*See* Docs. 1, 5.) On July 20, 2026, Respondents filed an opposition arguing that Petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6) to effectuate his removal, that the government complied with applicable regulations in revoking his release, and that there is a significant likelihood of removal in the foreseeable future. (Doc. 7 at 1–4.) On July 24, 2026, Petitioner filed a reply. (Doc. 8.)

## IV. DISCUSSION

Under 8 U.S.C. § 1231(a)(6), "[a]n alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C) . . . of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, *if released, shall be subject to . . . terms of supervision*." 8 U.S.C. § 1231(a)(6) (emphasis added); *see also* 8 U.S.C. § 1227(a)(1)(C)(i) ("Any alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 1258 of this title, or to comply with the conditions of any such status, is deportable."). Additionally, when a noncitizen subject to a final order of removal is not removed within the ninety-day removal period, and the government decides to release a noncitizen on supervision, the regulations codified at 8 C.F.R. §§ 241.4, 241.13 govern the parameters for re-

detention. *See Hernandez-Castro v. Lyons, et al.*, No. 1:25-cv-01574-JLT-SAB, 2025 WL 3771344, at *4–5 (E.D. Cal. Dec. 31, 2025) (citing *Diaz v. Wofford*, No. 1:25-cv-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025)); 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

These provisions are at play in this case. Petitioner was ordered removed under 8 U.S.C. § 1227(a)(1)(C)(i) for violating the terms of his nonimmigrant status. (Doc. 7 at 7, 17–27, 31–32, 47–48.) That order of removal is administratively final, as the BIA affirmed the IJ's order and further denied Petitioner's motion to reopen. (*Id.*) As such, Petitioner was initially subject to detention under 8 U.S.C. § 1231(a)(6) and then released on OSUP after ICE granted a temporary one-year stay of removal. (*See* Doc. 7 at 50; Doc. 14 at 3.) After approximately 3 years and 9 months while out on supervised release, Petitioner was re-detained on June 28, 2026. (Doc. 1-3 at 1.) In doing so, ICE issued a notice indicating that Petitioner's released had been revoked "to enforce the removal order" and that "ICE ha[d] to ability and means to effectuate [his] removal." (Doc. 7 at 55.) Specifically, the notice indicates that "ICE has obtained a travel document and scheduled [Petitioner's] removal to take place no later than 9/26/2026." (*Id.*) Petitioner argues that DHS failed to comply with applicable regulations in revoking his release and that his civil detention is unjustified as he does not pose a flight risk or danger. (Doc. 1 at 7–9.) By contrast, Respondents argue that Petitioner is not entitled to relief because there is a significant likelihood of removal in the reasonably foreseeable future under 8 C.F.R. § 241.13(i)(2). (Doc. 7 at 2–4.) The Court agrees with Respondents.

First, DHS complied with applicable regulations in revoking Petitioner's OSUP. The applicable revocation procedures provide:

> <u>Upon revocation, the alien will be notified of the reasons for revocation of his or her release</u>. <u>The Service will conduct an initial informal interview promptly</u> after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an

> evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3) (emphasis added). Not only did DHS issue a Notice of Revocation of Release clearly indicating that Petitioner's OSUP is being revoked because ICE now has the means to effectuate his removal, (Doc. 7 at 55), but also provided Petitioner with a prompt informal interview where he had the opportunity to respond, (*id*. at 56, 61). As such, the Court finds no due process violation on these grounds. *Cf. Hernandez-Castro*, 2025 WL 3771344, at *7 (finding a due process violation where the government failed to provide petitioner with a prompt interview under applicable regulations).

Petitioner argues that the informal interview did not provide adequate due process because it was conducted by a deportation officer not a neutral official, provided no advance notice, did not render a written decision, and did not allow Petitioner to contest the government's reason for revocation (e.g., possession of travel documents) where such reason was not based on Petitioner's conduct. (Doc. 8 at 5.) Additionally, Petitioner claims that though the interview was set for June 28, 2026, Petitioner's wife indicates that no interview occurred that day. (*Id*.; *see also* Doc. 1-4, ¶ 12.) The Court rejects these arguments.

To begin, applicable regulations allow the district director to revoke release where, as here, Petitioner has a current Albanian passport and an administratively final order of removal. *See* 8 C.F.R. § 241.4(l)(2)(iii) ("A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official: It is appropriate to enforce a removal order") (emphasis added); 8 C.F.R. 241.13(i)(2) ("The Service may revoke an alien's release under this section and return he alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.") (emphasis added); (Doc. 7 at 17–27, 31–32, 47–48, 55–56, 63). Additionally, applicable regulations require nothing more than notice and a prompt informal interview. 8 C.F.R. §§ 241.4(1)(1), 241.13(i)(3). Nor does Petitioner cite any

relevant caselaw to indicate otherwise. (Doc. 8 at 5.) Petitioner received notice and a prompt interview on June 28, 2026. (Doc. 7 at 55–56, 61.) Though Petitioner's wife indicates that, to her knowledge and based on her conversations with her husband, "no one at ICE . . . interviewed him" (Doc. 1-4, ¶ 12), the interview notice, dated June 28, 2026, clearly indicates otherwise. (Doc. 7 at 61.) The notice recites Petitioner's oral response and is signed by the interviewing officer. (*Id.*)

Second, Respondents may re-detain the Petitioner for purpose of effectuating his removal because his removal is significantly likely to occur in the foreseeable future. *See* 8 C.F.R. § 241.13(i)(2). Petitioner has a valid and current Albanian passport and an administratively final order of removal with a denied motion to reopen. (Doc. 7 at 17–27, 31–32, 47–48, 63); *cf. Le v. Chestnut, et al.*, 832 F. Supp. 3d 1081, 1089 (E.D. Cal. 2026) (finding that the lack of travel documents to Vietnam, or any evidence regarding steps taken to secure travel documents showed that removal was not reasonably foreseeable). DHS's notice of revocation also indicates that the government intends to remove Petitioner on or around September 26, 2026, (Doc. 7 at 55), which further demonstrates that removal is imminent. *See Nguyen v. Noem*, 797 F. Supp. 3d 651, 657, 672 (N.D. Tex. Aug. 10, 2025) (finding changed circumstances where the government had obtained travel documents and had scheduled petitioner's removal to Vietnam, rendering his removal imminent). Additionally, Petitioner's former one-year stay of removal, entered September 8, 2022, has now expired. (Doc. 14 at 3.) Thus, there is nothing on the present record to suggest that Petitioner removal to Albania is not imminent. Though Petitioner indicates that he has a pending petition for alien relative that was recently scheduled for an interview, (*see* Doc. 1-3 at 1), Petitioner fails to explain how that pending petition provides an avenue for relief or prevents his removal to Albania where, as here, the BIA has already once denied Petitioner's motion to reopen immigration proceedings. (*See* Doc. 7 at 47–48); 8 C.F.R. § 1003.2(c)(2) ("[A] party may file only one motion to reopen deportation or exclusion proceedings (whether before the Board or the immigration judge) . . .").[3] There is no indication Petitioner has filed another

---

[3] Because the Court finds that Respondents complied with applicable regulations in revoking Petitioner's release and finds that his removal is significantly likely to occur in the reasonably foreseeable future under 8 C.F.R. §§ 241.13(i)(2), (i)(3), the Court finds that Petitioner's reference to immigration habeas

motion to reopen or reconsider or requested a stay of removal from the BIA pending a determination on his family petition. (*See* Docs. 1, 8; Doc. 7 at 4.)

For the foregoing reasons, the Court **ORDERS**:

1. The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2. The motion for temporary restraining order (Doc. 5) is **DENIED** as **MOOT**.

3. The order prohibiting Respondents from transferring Petition away from this District or out of the United States is **WITHDRAW**.

4. The Clerk of Court is directed to **CLOSE** the case.

IT IS SO ORDERED.

Dated: _August 25, 2026_

UNITED STATES DISTRICT JUDGE

---

caselaw, where certain courts have granted immediate release to petitioners arrested at their adjustment of status interviews is unavailing and inapplicable. (*See* Doc. 8 at 6–7.) Not only was Petitioner *not* arrested at his adjustment of status interview—but rather at the airport on his way to such interview—the Petitioner here is subject to an administratively final order of removal and has valid travel documents to Albania. *Cf. Ngugi v. Lyons*, *et al.*, No. 1:25-cv-01783-KES-EPG, 2026 WL 807542, at *1, 2–3 (E.D. Cal. Mar. 23, 2026) (finding that petitioner—who had overstayed his visa and remained in the United States for years unencountered without ever being placed into removal proceedings or ordered removed—who was then arrested at his adjustment of status interview violated the INA and raised serious constitutional concerns, and ordering petitioner's immediate release), *findings and recommendations adopted in full*, 2026 WL 946905, at *1 (E.D. Cal. April 7, 2026). Likewise, the Court need not address the parties' arguments regarding OSUP revocation based on Petitioner's failure to update ICE of his residential address (e.g., in moving from New York to California), (*see* Doc. 7 at 4; Doc. 8 at 2–3), because DHS did not rely on such rationale for revoking Petitioner's release. (*See* Doc. 7 at 55.)